```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

| | | |
|---|---|---|
| SHEILA SEENEY, | : | CIVIL ACTION |
| | : | NO. 08-5032 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| ELWYN, INC., | : | |
| | : | |
| Defendant. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                                APRIL 22, 2010

**I. Introduction**

Plaintiff, Sheila Seeney ("Seeney" or "Plaintiff"), brings this Title VII action against Defendant, Elwyn, Inc. ("Elwyn" or "Defendant"), alleging racial discrimination and retaliation.[1] Plaintiff is an African American female who resides in Pennsylvania. Defendant is a residential care center for individuals with mental and physical disabilities.[2] Plaintiff was employed by Defendant from December 1980 until February 2006. Before the Court is Elwyn's motion for summary judgment. For the reasons that follow, the motion for summary

---

[1] Plaintiff instituted this action pro se. The Court later appointed counsel to facilitate the matter. The Court thanks Plaintiff's counsel, Michael J. Needleman, for his work.

[2] Luceni Kamara, Plaintiff's shift supervisor and former employee of Elwyn, is the person who allegedly committed the acts of discrimination. Mr. Kamara is of African national origin. (Pl.'s Dep. at 34:10-14.) He is not African American.

1

judgment will be granted.

**II. Background**

Seeney was employed at Elwyn for twenty-five years as a member of the residential living staff, which had responsibility for the care and supervision of Elwyn's neediest, round-the-clock care clients. Plaintiff claims she had an exemplary work record until 2005 when her immediate supervisor on the second shift, Luceni Kamara ("Kamara"), began harassing her.

On October 18, 2005, Seeney reported to work, as usual, at 10 p.m. When she arrived, she observed that a client ("B.W.") had soiled himself, and had been left unattended for sometime by the personnel in the preceding shift. (Seeney Dep. at 57:3-9.) Seeney informed Kamara of this state of affairs, as he was the second shift supervisor at the time, and requested his assistance in placing B.W. in the shower. Seeney testified that she believed it was best to clean B.W. in the shower and Kamara felt B.W. should first be cleaned in the transportable wash basin. Seeney claims Kamara refused to put B.W. in the shower, and he called another employee to help wash B.W. in the wash basin. Following a disagreement between Seeney and Kamara about how to properly clean B.W., Kamara sent Seeney home before completing her shift.

Plaintiff was suspended for three days due to the October 18, 2005, incident. The suspension letter indicated that

Plaintiff was suspended due to her refusal to accept a reasonable job assignment and directive by her supervisor, i.e., to clean B.W. using the basin instead of the shower. (Def.'s Mot. Summ. J. Ex. H.) Plaintiff submitted a response letter to Elwyn regarding the October 18 incident which makes no complaints about racial discrimination, disparate treatment or retaliation. (Def.'s Mot. Summ. J. Ex. I.)

Afterwards, Seeney reported to the Elwyn management that Kamara was sleeping while on duty. Kamara was suspended for this infraction. In December 2005, Kamara was made the third shift supervisor and chose to work in the same building where Seeney worked. (Seeney Dep. at 101:2-11.) Subsequently, Plaintiff made a series of complaints about Kamara's conduct to Elwyn's management.

In December 2005, Plaintiff wrote to management that Kamara alleged she had improperly left her shift, whereas she claims she did not. This letter makes no reference to racial discrimination, disparate treatment or retaliation. Seeney was not suspended or disciplined for this incident. (Def.'s Ex. J.)

In January 2006, Seeney complained that Kamara intentionally bumped into her in the hallway, she claims this was retaliation for her reporting that he was sleeping on the job. She complained that Kamara's behavior was aggressive, erratic and abusive. This letter also makes no reference to racial

discrimination or disparate treatment. (Def.'s Ex. K.)

In February 2006, Plaintiff submitted a letter complaining about an incident where Kamara yelled at her after she removed a log book from his desk. This letter makes no complaint about racial discrimination or disparate treatment. (Def.'s Ex. L.)

On the morning of February 22, 2006, after another alleged incident with Kamara, Seeney resigned. Seeney claims Elwyn management took no disciplinary action against Kamara about her complaints and, as a result, she felt compelled to resign.

In order to implement her resignation, Seeney met with Elwyn manager Peter Vitarelli ("Vitarelli"). Plaintiff testified that Vitarelli said nothing out of the ordinary to her during this meeting. However, Vitarelli contends he pleaded with Seeney to stay and offered to transfer her to another building or shift apart from Kamara.

## III. MOTION FOR SUMMARY JUDGMENT

Elwyn moves for summary judgment on both the racial discrimination and retaliation claims. Elwyn argues that Plaintiff has failed to meet her burden to establish a prima facie case of discrimination and disparate treatment in violation of Title VII and/or retaliation also in violation of Title VII.

### A. Summary Judgment standard

Summary judgment is proper when "the pleadings, the

4

discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if its existence or non-existence would affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of fact is "genuine" when there is sufficient evidence from which a reasonable jury could find in favor of the non-moving party regarding the existence of that fact. Id. at 248-49. "In considering the evidence, the court should draw all reasonable inferences against the moving party." El v. Se. Pa. Transp. Auth., 479 F.3d 232, 238 (3d Cir. 2007).

"Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by showing-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof." Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004) (quoting Singletary v. Pa. Dep't. of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001)). Once the moving party has discharged its burden, the nonmoving party "may not rely merely on allegations or denials in its own pleading; rather, its response must-by affidavits or as otherwise provided in [Rule 56]-set out specific

facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

   **B. Count I - Racial Discrimination**

      **1. Legal Standard**

   Title VII protects employees from discrimination by their employers on the basis of race, color, religion, sex or national origin. 42 U.S.C. § 2000e-2. To prevail on a discrimination claim based on indirect evidence[3], an employee must rely upon the familiar three-step burden shifting analysis under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). First, a plaintiff must establish a prima facie case for discrimination. Id. at 802. That is, a plaintiff must demonstrate 1) that she is a member of a protected class; 2) that she was qualified for the position in question; 3) that she suffered an adverse employment action; and 4) that she was terminated "'under circumstances that give rise to an inference of unlawful discrimination.'" Waldron v. SL Indus. Inc., 56 F.3d 491, 494 (3d Cir. 1995) (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)).

   The Third Circuit has adopted a flexible view of this test, rejecting the requirement that a plaintiff compare himself

---

   [3] Plaintiff does not claim that she has direct evidence of discrimination. Fasold v. Justice, 409 F.3d 178, 184 (3d Cir. 2005) (explaining that without direct evidence of discrimination, a plaintiff must proceed under the McDonnell Douglas framework).

to a similarly-situated individual from outside her protected class to raise an inference of unlawful discrimination. See Sarullo v. U.S. Postal Serv., 352 F.3d 789, 798 n.7 (3d Cir. 2003). Importantly, however, a plaintiff "must establish some causal nexus between his membership in a protected class" and the adverse employment decision complained of. Id.

Establishing a prima facie case creates a presumption of unlawful discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993).[4] Then, the burden of production shifts to defendant to set forth a legitimate, non-discriminatory reason for its action. Id. Notably, the Third Circuit has held that this is a "relatively light burden" because the defendant "need not prove that the tendered reason actually motivated its behavior" but only that it may have. Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994).

Upon defendant advancing such a reason, the presumption of unlawful discrimination "'is rebutted' . . . and 'drops from the case.'" St. Mary's Honor Ctr., 509 U.S. at 507 (quoting Burdine, 450 U.S. at 255 & n.10 (internal citation omitted)). Then, plaintiff must be given the opportunity to "show by a preponderance of the evidence that the employer's explanation is

---

[4] Although the McDonnell Douglas framework shifts the burden of production to defendant, the ultimate burden of persuasion always remains with plaintiff. Burdine, 450 U.S. at 253.

7

pretextual." Fuentes, 32 F.3d at 763; see also id. at 764 (noting that a Title VII plaintiff may not "avoid summary judgment simply by arguing that the factfinder need not believe the defendant's proffered legitimate explanations"). To demonstrate pretext, plaintiff must provide evidence that would allow a fact finder reasonably to "(1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not the motivating or determinative cause of the employer's action." Id. at 764.

### 2. Prima Facie Case

It is undisputed that Plaintiff can establish the first and second elements of a prima facie case of unlawful racial discrimination. Plaintiff is African American and was qualified for her position. The parties dispute, however, whether Seeney has established the third and fourth prongs of a prima facie case – that she suffered an adverse employment action and that she was terminated "'under circumstances that give rise to an inference of unlawful discrimination.'" Waldron, 56 F.3d at 494 (quoting Burdine, 450 U.S. at 253).

### a. Constructive Discharge – Adverse Employment Action Prong

Plaintiff has not specifically alleged an adverse employment action but, in her response brief, relies on a theory of constructive discharge. She argues "there are enough facts of record on which any reasonable juror could conclude Seeney was

8

constructively discharged[.]" (Pl.'s Resp. at 4.)

To establish a constructive discharge claim, an employee must demonstrate that the employer knowingly permitted conditions of discrimination in the workplace "so intolerable that a reasonable employee would be forced to resign." Levendos v. Stern Entm't, Inc., 860 F.2d 1227, 1232 (3d Cir. 1988) (citation omitted). An employee's subjective perceptions of unfairness or harshness do not govern a claim of constructive discharge. Gray v. York Newspapers, Inc., 957 F.2d 1070, 1083 (3d Cir. 1992). Instead, the focus is on the reasonable person, Clowes v. Allegheny Valley Hosp., 991 F.2d 1159, 1162 (3d Cir. 1993), and courts employ an "objective test to determine whether an employee can recover on a claim of constructive discharge." Duffy v. Paper Magic Group, 265 F.3d 163, 167 (3d Cir. 2001).

Courts have considered a number of factors as indicative of constructive discharge, including: (1) a threat of discharge; (2) suggestions or encouragement of resignation; (3) demotion or reduction in pay or benefits; (4) involuntary transfer to a less desirable position; (5) alteration of job responsibilities; and (6) unsatisfactory job evaluations. Clowes, 991 F.2d at 1161.

Plaintiff cannot point to any evidence in the record that she was constructively discharged. Simply put, there are no facts in the record that Kamara's alleged discrimination or

9

hostility toward Plaintiff was based on her race. In fact, Seeney's numerous letters to Elwyn's management complaining of Kamara's alleged conduct make no reference to racial discrimination, disparate treatment based on her race or retaliation after making race-based complaints. See, e.g., Clayton v. Pa. Dep't. of Welfare, 304 Fed. App'x 104, 109 (3d Cir. 2008) (non-precedential) (finding that district court properly granted summary judgment to employer where plaintiff failed to demonstrate any evidence of racial discrimination in constructive discharge claim).

As this Court has previously held, at the summary judgment stage, generalized allegations of discrimination are insufficient as a matter of law. See Clair v. August Aeropace Corp., 592 F. Supp. 2d 812, 823 n.19 (E.D. Pa. 2009) (Robreno, J.) ("At the summary judgment stage, such generalized allegations are deficient as a matter of law. . . . This is so because in their absence, Clair fails to meet her burden of pointing to the existence of a genuine issue of material fact in the record.") (citing Robinson v. Nat'l Med. Care, Inc., 897 F. Supp. 184, 187 (E.D. Pa. 1995) (noting that where plaintiff could not recall specific instances of disparate treatment, his subjective beliefs were insufficient to withstand a motion for summary judgment)).

In this case, Plaintiff was not: (1) threatened with discharge; (2) encouraged to resign; (3) demoted or did not

receive a reduction in pay; (4) involuntarily transferred to a less desirable position; (5) subject to altered job responsibilities; or (6) subject to unsatisfactory job evaluations. Clowes, 991 F.2d at 1161 (holding that objective proof of discrimination is required to sustain an allegation of constructive discharge).

Additionally, although Seeney wrote several letters to Elwyn management,[5] there is no sign that she sought assistance from other human resources department workers, her union or any other Elwyn upper management officials. See, e.g., Goss v. Exxon Office Sys. Co., 747 F.2d 885, 888 (3d Cir. 1984) (constructive discharge found where supervisor repeatedly verbally abused plaintiff, questioned her abilities and stated that he doubted she would be able to manage motherhood and a career. Plaintiff sought redress with higher levels of management pursuant to the company's "open door" policy, but to no avail. After several meetings regarding her concerns with her supervisor, plaintiff was informed that she was being removed from her territory. She was told that her options were to accept another far less attractive, less lucrative territory or to quit.). In fact, Plaintiff admits that she did not follow up on the October 18,

---

[5] Seeney's letters are not addressed to any Elwyn official in particular. However, she indicates in the letters and in her deposition that she wrote the letters in response to a request from Debra Potts, an assistant unit director at Elwyn.

11

2005 incident with Elwyn officials or her union. (Seeney Dep. at 98:9-14.)

Under these circumstances, a reasonable jury could not conclude that the conditions faced by Seeney during the five-month period in question were so intolerable that a reasonable employee facing the same conditions would leave the job. See Jainlett v. CVS Corp., No. 06-4196, 2008 WL 2929155 (E.D. Pa. July 30, 2008) (Robreno, J.) (finding no constructive discharge where an employee's hours were temporarily reduced, plaintiff did not seek help from upper management, and change in hours was not presented in a confrontational manner); Carattini v. Woods, Inc., No. 08-5201, 2010 WL 4474453, at *8 (E.D. Pa. Feb. 4. 2010) (Robreno, J.) (finding no constructive discharge where an employee sought no help from upper management after she was temporarily transferred).

Therefore, Seeney has not pointed to an adverse employment action and, consequently, has not established a prima facie case of racial discrimination. Elwyn's motion for summary judgment will be granted as to Seeney's claim of constructive discharge.

**C. Count II - Retaliation**

Plaintiff claims that Kamara retaliated against her for her complaints to management that he was sleeping on the job and that, as a result, Elwyn is liable under Title VII.

12

**1. Legal standard**

Claims of retaliation, based on indirect evidence, in employment are governed by the familiar McDonnell Douglas framework. Weston v. Pennsylvania, 251 F.3d 420, 432 (3d Cir. 2001). To establish a prima facie case of retaliation under Title VII, "an employee must prove that (1) she engaged in a protected employment activity, (2) her employer took an adverse employment action after or contemporaneous with the protected activity, and (3) a 'causal link' exists between the adverse action and the protected activity." Andreoli v. Gates, 482 F.3d 641, 649 (3d Cir. 2007). "[A] plaintiff claiming retaliation . . . must show that a reasonable employee would have found the alleged retaliatory actions materially adverse in that they well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Moore v. City of Philadelphia, 461 F.3d 331, 341 (3d Cir. 2006).

**2. Analysis**

**a. Protected employment activity**

Here, it is undisputed that Plaintiff engaged in a protected employment activity when she complained to Elwyn management about Kamara's behavior. Id. at 343 ("Opposition to discrimination can take the form of informal protests . . . including making complaints to management."). Therefore, the Court proceeds to examine whether Seeney has proffered sufficient

evidence of the second two elements of retaliation to survive Defendant's motion for summary judgment.

### b. Adverse employment action

Plaintiff fails to point to sufficient evidence that Elwyn took an adverse employment action after, or contemporaneous with, the protected activity. Plaintiff was suspended for three days in October 2005 following the October 18, 2005, incident with Kamara and B.W. However, prior to her suspension, Plaintiff made no complaints about Kamara. Thus, this suspension cannot form the basis of any retaliation claim.[6]

Plaintiff points to no other evidence in the record supporting an alleged adverse employment action, nor does she cite any case where employees in similar circumstances were found to have suffered retaliation. As with her discrimination claim, Plaintiff cannot support a claim of constructive discharge as she was not: (1) threatened with discharge; (2) encouraged to resign; (3) demoted or did not receive a reduction in pay; (4) involuntarily transferred to a less desirable position; (5)

---

[6] Moreover, the Court notes that this 2005 suspension is barred by the statute of limitations. Pursuant to Title VII, a plaintiff must file an administrative charge with the EEOC within 300 days of the alleged act of discrimination, or within thirty days after receiving notice that the state or local agency has terminated the proceedings under state or local law, whichever is earlier. 42 U.S.C. § 2000e-5 (e)(1). Plaintiff filed her EEOC charge on December 1, 2006, more than 300 days after she was suspended.

subject to altered job responsibilities; or (6) subject to unsatisfactory job evaluations. Clowes, 991 F.2d at 1161.

The Court agrees with Defendant that the complained-of incidents are not materially adverse employment actions. Kamara's alleged retaliatory behavior, even if true, while rude and not worthy of a professional working environment, does not rise to racially-motivated retaliation. While Title VII prohibits discrimination, it does not regulate interpersonal relations at the workplace nor does it command general good manners. These cited instances occurred over a period of five months and were not physically or verbally threatening, intimidating or abusive. Rather, Plaintiff's treatment reveals the type of petty slights for which Title VII does not provide a remedy. See Jensen, 435 F.3d at 451 ("The statute prohibits severe or pervasive harassment; it does not mandate a happy workplace.").

Accordingly, Plaintiff has failed to establish a prima facie case of retaliation. Elwyn's motion for summary judgment will be granted as to Seeney's claim of retaliation.

**IV. CONCLUSION**

For the reasons stated above, Elwyn's motion for summary judgment will be granted. An appropriate order will follow.